```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA

JAMES OUTCALT,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )        Case No. CIV-14-079-JHP-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )
```

## REPORT AND RECOMMENDATION

Plaintiff James Outcalt (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on March 28, 1985 and was 28 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a fast food clerk, detassler, and vineyard laborer. Claimant alleges an inability to work beginning October 11, 2007 due to limitations resulting from bipolar disorder, depression, anxiety, and PTSD.

**Procedural History**

3

On April 8, 2008, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. The Administrative Law Judge ("ALJ") issued an unfavorable decision on June 25, 2010, which was appealed to this Court. However, the decision was remanded for further proceedings on Defendant's motion when the recording of the hearing transcript was found to be defective.

On July 19, 2011, the ALJ issued a second unfavorable decision. The decision was reversed on appeal to this Court and remanded for further proceedings.

On January 17, 2014, ALJ Bernard Porter issued a third unfavorable decision on Claimant's application after a hearing. Claimant declined to seek review by the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform a full range of light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) assessing Claimant's credibility; (2) reaching an unsupported RFC; and (3) failing to fully develop the record.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of arthralgia of multiple sites, gastritis, seizure disorder, bipolar disorder, PTSD, anxiety, and antisocial personality disorder. (Tr. 427). The ALJ concluded that Claimant retained the RFC to perform a full range of light work. (Tr. 429). In so doing, the ALJ determined Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for about six hours in an eight hour workday; sit about six hours in an eight hour workday; frequently balance, stoop, and crouch; occasionally climb ramps and stairs but never climb ladders or scaffolds; occasionally kneel; never crawl; occasionally use hand controls; and frequently handle, finger, and feel with both hands. Claimant could not work around unprotected heights and moving mechanical parts. He could not operate a motor vehicle; could not work in any environments where there are temperature extremes. Claimant is limited to simple tasks and simple work-related decisions. He could occasionally interact with supervisors and co-workers. He

5

could have not public interaction. Due to episodic symptomatology, Claimant would be off task 5% of the workday and miss one day of work each month. (Tr. 429).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of marker, sorter, and cleaner and polisher, which the expert testified existed in sufficient numbers in both the regional and national economies. (Tr. 440). As a result, the ALJ found Claimant was not disabled from April 8, 2008 through the date of the decision. Id.

Claimant first challenges the ALJ's credibility analysis. The ALJ did not find Claimant's statements as to the intensity, persistence, and limiting effects of his symptoms to be entirely credible. (Tr. 431). He also found discrepancies between the medical record and Claimant's testimony. (Tr. 438). The ALJ found Claimant cares for a child, can prepare food and does some housework. He remodeled his home, swam often, worked as a parttime roofer and pushed pallets. The ALJ found this testimony inconsistent to Claimant's allegations of disabling pain. He also stated he did not get along with others yet he walked around and visited with friends, played cards, and talked. The ALJ also found that the medical record indicated he was doing well on psychotropic medications. (Tr. 438).

6

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give

reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ cited to the medical record, the discrepancies he found between Claimant's testimony and the various findings on his functional limitations. This Court finds no error in the ALJ's analysis.

**RFC Assessment**

In a rather vague argument, Claimant asserts the ALJ's RFC assessment was not supported by the evidence. Claimant does not cite to a specific example of this deficiency. Rather, Claimant simply cites to multiple paragraphs of the appropriate standards for assessing the RFC and the ALJ's responsibility in assessing it.

The ALJ's RFC as stated herein is well-supported by the opinions rendered by the state agency physicians including Dr. Jennifer Bruning-Brown, who found in March of 2006 that Claimant had only mild functional limitations. (Tr. 322). Dr. Cynthia Kampschaefer determined in June of 2008 that Claimant's mental impairment was "not severe." (Tr. 355). She, too, found Claimant to have only mild functional limitations. (Tr. 365). In May of

2008, Dr. Diane Brandmiller determined Claimant's long-term and short-term memories were intact as well as concentration and abstract thinking. He would be able to understand and carry out simple or complex instructions, understands "visual" learning, can balance a bank account and perform simple calculations. He goes out with friends but reports poor sleep, anger, and difficulty handling stress. (Tr. 354). However, the ALJ accommodated these limitations in his RFC assessment. (Tr. 429).

Dr. William R. Stone, Jr. determined in February of 2006 that Claimant was capable of performing basic daily living tasks and minimally adequate social contacts. He was able to sustain concentration and attention. Claimant was capable of understanding and remembering short and simple instructions and was psychologically capable of carrying out such instructions under ordinary supervision. Claimant was found to be capable to relate appropriately to co-workers and supervisors and adapting to ordinary day-to-day changes in his environment. (Tr. 375).

Dr. Mark Rogow completed a medical source statement in February of 2010. He determined Claimant was markedly limited in the ability to understand and remember detailed instructions and ability to carry out detailed instructions. He found Claimant was moderately limited in 14 additional areas. (Tr. 377-78). An

9

additional medical source statement was offered by Dr. Broadway in May of 2011. He found marked limitations in Claimant's ability to interact appropriately with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and ability to maintain socially appropriate behavior to adhere to basic standards of neatness and cleanliness. (Tr. 419).

Dr. Tracy Baker determined in a medical source statement dated February of 2013 that Claimant had only moderate limitations is several areas. (Tr. 611-12).

Based upon these opinions, the ALJ reasonably formulated his RFC to ascertain Claimant's functional limitations. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96–8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing

basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

### Duty to Develop the Record

Claimant also contends that the ALJ should have developed the record in some unspecified way because "[t]he Plaintiff clearly had physical impairments that were not treated or sufficiently addressed that would result in severely limiting exertional and non-exertional impairments." This Court is truly at a loss as to what relief Claimant seeks with this argument. A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent,

11

available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361. Nothing in the record or the ALJ's decision suggests that the ALJ failed in his duty to develop the administrative record. No error is attributed to this issue.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE